UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60558-CIV-COHN/SELTZER

JAMES RIVER INSURANCE COMPANY,
an Ohio corporation,

       Plaintiff,

vs.

FORTRESS SYSTEMS, LLC, Nebraska
limited liability company, and BODYWELL
NUTRITION, LLC, a Florida limited
liability company,

       Defendants.
_____/

## ORDER DETERMINING CHOICE-OF-LAW

**THIS CAUSE** is before the Court upon Plaintiff James River Insurance Company's ("James River's") Motion for Choice-of-Law Determination [DE 27] ("Motion"). The Court has considered the Motion, Defendants Bodywell Nutrition, LLC ("Bodywell") and Fortress Systems, LLC's ("FSI's") Response [DE 28], Defendants' Notice of Scrivener's Error in the Response [DE 29], James River's Reply [DE 30], the record in this case, and is otherwise fully advised in the premises.

The Court has also considered Bodywell's Request for Oral Argument on Choice of Law Issue [DE 31], James River's Response [DE 32], and Bodywell's Reply [DE 33]. Because the parties have already thoroughly addressed the issue in their memoranda, the Court finds oral argument to be unnecessary. Therefore, the request for oral argument will be denied.

## I. BACKGROUND

In this action, James River seeks a determination that it has no obligation to defend or indemnify FSI in an underlying lawsuit.  In the underlying lawsuit, <u>Bodywell Nutrition LLC v. Fortress Systems, LLC</u>, Case No. 10-61646-CIV-COHN/SELTZER (S.D. Fla. filed Aug. 2, 2010), Bodywell, a sports nutrition and dietary supplement company, sued FSI, a dietary supplement manufacturer.  Bodywell had retained FSI to manufacture a powder form drink, which was supposed to be soluble in liquid.  However, the product was defective because the powder clumped together, turned hard, fused together, and became insoluble.  Therefore, on August 2, 2010, Bodywell filed its complaint against FSI for breach of express warranty (Count I), breach of implied warranty for fitness for particular purpose (Count II), and breach of implied warranty of merchantability (Count III).  On January 19, 2011, FSI filed a counterclaim for breach of contract, alleging that Bodywell failed to pay certain money owed under the manufacturing agreement.  Finally, on February 20, 2011, Bodywell filed an amended complaint to add an additional claim for negligent shipping/transport of the product by FSI's subcontractors (Count IV).

During the relevant period, FSI had a Commercial General Liability Insurance Policy [DE 1-2] ("Insurance Policy") with James River, with a $5 million policy limit.  Though FSI tendered the suit to James River on August 16, 2010, James River disclaimed coverage under the insurance policy.

On March 4, 2011, Bodywell and FSI entered into a settlement agreement in the underlying case, in which the parties agreed to the following terms: (1) they would file a stipulation of settlement and joint motion for entry of final judgment requesting that the

Court enter a final judgment in Bodywell's favor only on Count IV in the amount of $10,450,000; (2) Bodywell would dismiss with prejudice its remaining claims against FSI, and FSI would dismiss its counterclaim; and (3) FSI would assign its right to pursue its claim under the James River insurance policy to Bodywell.  In the settlement agreement, the parties contemplated that, if by 5:00 p.m. on March 8, 2011, James River either accepted FSI's defense and agreed to provide coverage or agreed to pay Bodywell the $5 million policy limit, then the settlement agreement would be null and void and of no legal effect.  When FSI brought this information to James River's attention, James River offered to provide FSI with a defense but reserved its right to dispute coverage.  As FSI informed James River, such an offer was insufficient to invalidate the settlement agreement.  Accordingly, the settlement agreement was binding and final.  On March 14, 2011, Bodywell and FSI filed their settlement agreement under seal, and on March 17, 2011, they filed their Stipulation of Settlement and Joint Motion for Entry of Final Judgment.  On March 18, 2011, the Court entered a Final Judgment in accordance with the parties' filings.

 Meanwhile, on March 15, 2011, James River had filed this declaratory action against FSI and Bodywell.  Then, on April 19, 2011, back in the underlying lawsuit, Bodywell sought to institute proceedings supplementary and to implead James River in that case.  After the issues were fully briefed, United States Magistrate Judge Barry S. Seltzer recommended that the insurance coverage dispute be decided in this action, and the undersigned agreed.

## II. DISCUSSION

At issue in the pending Motion is the parties' dispute over which state law applies to the interpretation of the insurance policy.  See Mot. at 1.  James River contends that Nebraska law applies, because Florida adheres strictly to the doctrine of *lex loci contractus*, and the insurance policy was executed in Nebraska.  Id.  Defendants respond that Florida law applies, because a "Service of Suit" provision in the insurance policy mandates that the law of the forum state applies.  See Resp. at 6.  In accordance with the discussion below, the Court concludes that Nebraska law governs the interpretation of the insurance policy.

### A. Nebraska Law Governs

"In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state."  Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996); see also Klaxon Co. v. Stentor Elec. Mfg Co., 313 U.S. 487, 496-97 (1941); Rando v. Gov't Emps. Inc. Co., 556 F.3d 1173, 1176 (11th Cir. 2009).  Therefore, this Court applies the choice-of-law rules of Florida.

Florida courts follow the rule of *lex loci contractus* when deciding which state's law governs the interpretation of an insurance contract.  State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006); Sturiano v. Brooks, 523 So. 2d 1126, 1129 (Fla. 1988) (considering and rejecting the significant relationships test in favor of *lex loci contractus*).  *Lex loci contractus* dictates that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining

an issue of insurance coverage." Id. (citing Sturiano, 523 So. 2d at 1129). In other words, an insurance policy is construed according to the laws of the state "in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done." Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995). The last act necessary to execute a policy is "the receipt and acceptance of the polic[y] by the named insured." Indus. Chem. & Fiberglass Corp. v. The N. River Ins. Co., 908 F.2d 825, 829 n.3 (11th Cir. 1990).

James River represents that the insurance policy in this case was both issued and delivered to FSI in Nebraska. See Commercial General Liability Policy Declarations, Insurance Policy [DE 1-3 at 1] ("Declarations Page"); Mot. at 1, 6. Defendants present no evidence and make no arguments to the contrary. See Resp. The declarations page contains a Nebraska address for FSI, see Declarations Page at 1, and Bodywell's complaint in the underlying lawsuit lists FSI as a "Nebraska limited liability company with its principal place of business located [in] . . . Nebraska," see Bodywell's Complaint [DE 1 in Case No. 10-61646-CIV]. James River also attaches to its Motion the Nebraska Secretary of State website listing for FSI [DE 27-1], which confirms a Nebraska address. Therefore, because it appears that the insurance policy was executed in Nebraska, under *lex loci contractus*, Nebraska law governs the interpretation of the insurance policy.

In their Response to James River's Motion, Defendants do not dispute the applicability of *lex loci contractus* under Florida law, nor do they dispute that the insurance policy was executed in Nebraska. Rather, Defendants rely on a "Service of Suit" provision in the insurance policy to argue that Florida law applies instead of

Nebraska law. In pertinent part, the provision states as follows:

> 6. SERVICE OF SUIT
>
> It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Common Policy Conditions, Insurance Policy [DE 1-3 at 37-38] ("Policy Conditions") ¶ 6. As explained below, Defendants' argument is meritless because the Service of Suit provision is inapplicable, and even if it were applicable, it would not change the Court's conclusion that Nebraska law governs.

### B. The Service of Suit Provision is Inapplicable

As an initial matter, the Service of Suit provision does not apply to this case because James River, the insurer, filed this lawsuit against its insured.[1] By its plain language, a Service of Suit clause such as the one at issue in this case only applies when an insured files suit against the insurer, not vice versa. For instance, in International Insurance Co. v. McDermott Inc., 956 F.2d 93 (5th Cir. 1992), another coverage dispute between an insured and an insurer, the court explained, "the Service of Suit clause itself speaks only to actions brought by the insured. Thus, when the

---

[1] In their memoranda, the parties disagree as to who should be considered the first filer. See Mot. at 12-13 (claiming James River filed first); Resp. at 17 (arguing James River's status as "first filed" should be disregarded because James River merely won a race to the courthouse); Reply at 9 (arguing, again, that James River filed first). This issue has now been settled in the underlying lawsuit. Magistrate Judge Seltzer determined that James River was the first to file, Report and Recommendation [DE 79 in Case No. 10-61646-CIV] at 9, and the undersigned agreed, Order Adopting Report and Recommendation [DE 85 in Case No. 10-61646-CIV] at 6-7.

action is first instituted by the insurer, the Service of Suit clause simply has no application." Id. at 95-96.  Defendants concede that McDermott stands for the proposition that a Service of Suit provision is inapplicable where an insurer first files suit.  See Resp. at 16("McDermott does not state that the clause is 'void' or 'unenforceable'; it merely says that it is not applied where the insurer files first."). James River points to a variety of other federal and state cases that have agreed with McDermott.  See, e.g., Ace Capital v. Varadam Found., 392 F. Supp. 2d 671, 675 (D. Del. 2005) ("Nothing in the Service of Suit clause prevents an insurer from bringing an action of its own against the insured.  If the insurer does so, the Service of Suit provision does not prescribe the forum for the action."); TIG Ins. Co. of Mich. v. Vision Serv. Plan, Case No. Civ. S050492MCEGGH, 2005 WL 2105303, at *3 (E.D. Cal. Aug. 31, 2005) ("While the clause does obligate [the insurer] to submit to the insured's choice of venue if the insured sues to recover benefits allegedly due under the policy, it does not preclude [the insurer] from filing its own action to adjudicate coverage in a venue of its choosing."); Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Research Corp., 850 F. Supp. 1509, 1528 (D. Wyo. 1994) ("if the litigation is initiated by the insurer, then the service of suit clause is irrelevant."); Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1292 (N.J. 2008) ("We read the service of suit clause as it has been read by nearly every court that has considered it—as a consent to jurisdiction by the insurer and a prohibition against an insurer interfering with a forum initially chosen by the insured.").

      The Court recognizes that the Service of Suit provisions in each of these cases differ slightly from the one in this case.  The provisions in the cases cited expressly

7

state that the insurer will submit to the jurisdiction of a court *at the request of the insured party*, whereas the clause in this case does not contain such language. Compare McDermott; 956 F.2d at 95 ("at the request of the Assured"), Ace Capital, 392 F. Supp. 2d at 674 ("at the request of the Assured"), TGI, 2005 WL 2105303, at *1 ("at your request"), and International Surplus, 850 F. Supp. at 1528 ("at the request of the insured"), with Policy Conditions ¶ 6 (no mention of the request of the insured). However, this distinction is inconsequential because the Service of Suit provision in this case goes on to outline the individuals at the insurer's company who are authorized to accept service of process, without any mention of the insured accepting service of process by the insurer.  See Policy Conditions ¶ 6 ("service of process in such suit may be made upon the Company's President or his nominee . . . ," "The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf . . . ," and "this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose . . . as their true and lawful attorney upon whom may be served any lawful process in any action . . .").  This language confirms that the Service of Suit provision at issue here, like those provisions in the above-cited cases, was intended to apply only in circumstances where the insured sues the insurer.  Accordingly, because in this case, the insurer has sued the insured, the Service of Suit provision is inapplicable.

### C. Even if the Service of Suit Provision Applied, Nebraska Law Would Still Govern

Nonetheless, even if the provision did apply, Nebraska law would still govern the interpretation of the insurance policy.  In support of their argument for the applicability of Florida law, Defendants argue first, that the Service of Suit provision mandates the application of Florida law, and second, that if the Court disagrees with Defendants' interpretation of the Service of Suit provision, then the provision is ambiguous and should be interpreted against the drafter, James River.  For the reasons discussed below, each of these arguments fails.

First, Defendants are mistaken in reading the Service of Suit provision to mandate the application of Florida law.  The phrase, "all matters arising hereunder shall be determined in accordance with the law and practice of such Court," does not articulate a choice of substantive law.  See, e.g., Allianz Ins. Co. v. SSR Realty Advisors, Inc., Case No. 02-7253, 2003 WL 21321430, at *6 (E.D. Pa. June 5, 2003) (interpreting identical phrase and finding "the plain language of the clause shows a consent to jurisdiction of any court of plaintiff's choice; it does not address the law that is to be applied."); Chesapeake Util. Corp. v. Am. Home Assurance Co., 704 F. Supp. 551, 557 (D. Del. 1989) (interpreting identical phrase and finding, "It is not a choice-of-law provision.  The clause alludes to the 'law and practice of such Court.'  It does not say 'such state' or 'such forum.'").  Nothing in the Service of Suit provision directs the application of the "law of this *State*"; the provision merely specifies the "law and practice of such *Court*."  See Policy Conditions ¶ 6.  "[T]he law and practice of this Court, in diversity cases, is to apply the law (including choice-of-law rules) of the forum state."

Chesapeake, 704 F. Supp. at 557. Here, the law of the forum state, Florida, requires that this Court apply *lex loci contractus*, and *lex loci contractus* requires the application of Nebraska law. See *supra* (applying Florida choice-of-law rules to this case).[2]

---

[2] Neither party cites (and the Court does not find) any binding case law specifically addressing whether a Service of Suit provision like the one in this case directs the application of the substantive law of the forum state. However, the Court finds persuasive the vast majority of case law from other jurisdictions, which find that such a provision does not constitute a choice-of-law provision. See, e.g. In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 780 F. Supp. 2d 514, 523 (E.D. La. 2011); Weitz Co., LLC v. Lloyd's of London, Case No. 4:04-CV-90353, 2008 WL 7796651, at *5 (S.D. Iowa March 31, 2008); Allianz Ins. Co. v. SSR Realty Advisors, Inc., Case No. 02-7253, 2003 WL 21321430, at *6 (E.D. Pa. June 5, 2003); Revco D.S., Inc. v. Gov't Emps. Ins. Co., 791 F. Supp. 1254, 1262 (N.D. Ohio 1991), aff'd, 968 F.2d 1216 (6th Cir. 1992); Chesapeake Util. Corp. v. Am. Home Assurance Co., 704 F. Supp. 551, 557 (D. Del. 1989); Singer v. Lexington Ins. Co., 658 F. Supp. 341, 344 (N.D. Tex. 1986); Carrier Corp. v. Home Ins. Co., 648 A.2d 665, 668 (Conn. Super. 1994); Liggett Group Inc. v. Affiliated FM Ins. Co., 788 A.2d 134, 144 (Del. Super. 2001); Burlington N. R.R. Co. v. Allianz Underwriters Ins. Co., Case No. 90C-07-108, 1994 WL 637011, at *4 (Del. Super. Aug. 25, 1994); Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 89C-SE-35, 1994 WL 721651, at *1 (Del. Super. March 28, 1994); Monsanto Co. v. Aetna Cas. & Sur. Co., Case No. 88C-JA-118, 1990 WL 9496, at *2 (Del. Super. Jan. 19, 1990); Norfolk S. Corp. v. Ca. Union Ins. Co., 859 So. 2d 167, 183 (La. Ct. App. 2003).

Defendants nonetheless argue that the Service of Suit provision requires the application of Florida substantive law. As James River notes, "the number of courts that have outright rejected [Defendants'] position is overwhelming." Reply at 2-4. Further, each of the cases Defendants cite in support of their position is either distinguishable from this case or otherwise unpersuasive. First, in Century Indemnity Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646, 584 F.3d 513 (3d Cir. 2009), neither party disputed the application of Pennsylvania state law, and the court only raised the choice-of-law issue *sua sponte*. Id. at 533. Also, though the court inferred, without citing any authority in support, that the service of suit provision suggested the application of the forum state's substantive law, the court also noted that Pennsylvania state law would apply under the applicable choice-of-law rules in that forum. Id. Second, in Lexington Ins. Co. v. Unionamerica Ins. Co., Case No. 85 Civ. 9181 (MJL), 1987 WL 11684 (S.D.N.Y. May 28, 1987), the court only considered choice-of-law as one factor in the deciding the main issue before that court: dismissal for *forum non conveniens*. Id. at *4. Additionally, the court concluded that New York law applied under the service of suit provision without citing any authority in support of such a proposition. See id. Defendants' citation to Core-Mark International Corp. v.

10

Second, Defendants suggest that if the Court does not agree with their interpretation of the Service of Suit provision, then it should find the provision to be ambiguous and interpret it against the drafter, James River. The Court disagrees; the provision is not ambiguous. Indeed, "[c]ourts should not put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." Health Options, Inc. v. Kaballer, 932 So. 2d 416, 420 (Fla. Dist. Ct. App. 2006) (quotations and citations omitted); see also Rickerl v. Farmers Ins. Exchange, 763 N.W.2d 86, 90 (Neb. 2009) (an insurance policy "should be read to avoid ambiguities, if possible, and the language should not be tortured to create them."). Under both Florida and Nebraska law, "the fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." Guerrier v. Mid-Century Ins. Co., 663 N.W.2d 131, 135 (Neb. 2003); Kipp v. Kipp, 844 So. 2d 691, 693-94 (Fla. Dist. Ct. App. 2003) ("The fact that both sides ascribe different meanings to the language does not mean the language is ambiguous . . .") (citing Lambert v. Berkley S. Condo. Ass'n, 680 So. 2d

---

Commonwealth Insurance Co., Case No. 05 Civ. 183(WHP), 2005 WL 1676704 (S.D.N.Y. July 19, 2005), is no more influential than the Lexington citation, because Core-Mark's conclusion relied on the Lexington decision. See Core-Mark, at *3. Third, in Fossil Creek Energy Corp. v. Cook's Oilfield Services, 242 P.3d 537 (Okla. Civ. App. 2010), the court based its decision on TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282 (10th Cir. 2007), a case distinct from this one because it analyzed a clause that explicitly provided for the application of the "law of the Netherlands," and not solely of "such Court." See Fossil Creek, 242 P.3d at 542 n.8; TH Agriculture, 488 F.3d at 1286, Fourth, and finally, Transamerica Leasing, Inc. v. Institute of London Underwriters, 7 F. Supp. 2d 1340 (S.D. Fla. 1998), rev'd on other grounds 267 F.3d 1303 (11th Cir. 2001), is similarly inapplicable to this case, because the court addressed a provision expressly stating that the policy was subject to "English law and practice," and not solely to the laws and practice of "such Court." Id. at 1346.

588, 590 (Fla. Dist. Ct. App. 1996) (holding that a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner)).  Despite Defendants' attempt to create ambiguity in the insurance policy, the Court finds none.  Under the plain meaning of the Service of Suit provision, the insurance policy dictates only that James River consented to service in any jurisdiction of its insured's choice.  James River did not also consent to the application of the substantive state law of any such jurisdiction, let alone Florida law.  See Allianz, 2003 WL 21321430, at *6 (finding that the plain language of "all matters arising hereunder shall be determined in accordance with the law and practice of such court" did not speak to choice-of-law); Singer v. Lexington Ins. Co., 658 F. Supp. 341, 344 (N.D. Tex. 1986) ("By its plain language, the section is a consent to the jurisdiction of any court of plaintiffs' choice.  The reference to the 'law and practice of such Court' includes, of course, the choice of law principles applicable in the forum court.").

Therefore, even if the Service of Suit provision did apply to this case despite the fact that the insurer sued the insured, and not vice versa, the provision does not determine choice-of-law.  Rather, under the principle of *lex loci contractus*, Nebraska law governs.

### D. Policy Supports This Outcome

Finally, two important policy reasons support the Court's conclusion.  First, interpreting the Service of Suit provision as a consent to service but not as a choice-of-law selection promotes the policy of such clauses without encouraging forum shopping.  Service of Suit provisions are not designed to permit any state law to apply to the interpretation of the policy, but rather simply "to assure the insured that it [does] not

have to travel to the domicile of the [insurer] to assert its legal rights under the policy." Consol. Sun Ray Inc. v. Steel Ins. Co. of Am., 190 F. Supp. 171, 174 (E.D. Pa. 1961). Defendants' proposed interpretation of the Service of Suit provision in this case would reach beyond the intended purpose of such provisions and promote forum shopping. As one court noted, under an interpretation like Defendants', "the court chosen by the insured would be required to apply its substantive laws to the dispute without performing an analysis pursuant to its conflict of laws rules. Such an interpretation would have the undesirable effect of allowing the objectionable practice of forum shopping to proceed unchallenged by allowing an insured to simply pick the forum based on the law it believes to be most favorable to its case, without regard for whether or not the forum has any connection to the dispute or the parties." Norfolk S. Corp. v. Ca. Union Ins. Co., 859 So. 2d 167, 183 (La. Ct. App. 2003).

Second, the Court's interpretation of the Service of Suit provision promotes clarity and certainty in contracting. Florida's *lex loci contractus* doctrine maintains the same goal: to promote clarity and certainty and to avoid fragmented, inconsistent results. See Pastor v. Union Central Life Ins. Co., 184 F. Supp. 2d 1301, 1308 (S.D. Fla. 2002). Indeed, to "abandon this [*lex loci contractus*] principle and permit a party to change or modify contract terms by moving to another state [or filing suit in another state] would unnecessarily disrupt the stability of contract." Roach, 945 So. 2d at 1164. As James River notes, "[Defendants'] interpretation would lead to a high risk of inconsistent results in multi-state litigation and for insureds that engage in interstate commerce. For example, a national distributor would have no certainty which law governs its policies if the law of any state where the product is ultimately distributed

13

could potentially control the interpretation of the policy." Mot. at 11 (citing In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 780 F. Supp. 2d 514, 523 (E.D. La. 2011) ("interpreting Northfield's policies under several states laws could result in contradictory and irreconcilable obligations under the very same policies for the same alleged injuries, inevitably causing inconsistent results.")).

Defendants suggest that neither policy reason should influence the Court's decision as, "in the case at bar, there was no risk of forum-shopping because James River *chose* to file this declaratory action in Florida," Resp. at 14, and "[i]n this case there is no risk of inconsistent outcomes because both parties selected the same court to adjudicate all matters under the policy and no other related actions pend in other jurisdictions," id. at 14-15. Defendants' narrow-sited view neglects the fact that policy considerations require courts to look beyond a particular case and consider long-term consequences. See, e.g., Yorgan v. Durkin, 715 N.W.2d 160, 168 (Wis. 2006) ("we must look beyond this case to the consequences that are likely to follow from the type of new exception to the general rule . . . "). Defendants also emphasize that as the drafter, James River was in a position to write in a Nebraska choice-of-law provision if it desired one, but it chose not to. Id. at 14, 15. However, whether or not James River was in the best position to write in such a provision, Defendants point to no law requiring James River to do so. Further, the absence of an explicit Nebraska choice-of-law provision is inconsequential in this case, because, as explained above, Nebraska law applies anyway under the applicable choice-of-law rules.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff James River Insurance Company's Motion for Choice-of-Law Determination [DE 27] is **GRANTED**. The Court determines that Nebraska law governs the interpretation of the insurance policy in this case. It is further

**ORDERED AND ADJUDGED** that Bodywell's Request for Oral Argument on Choice of Law Issue [DE 31] is **DENIED**.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Broward County, Florida, on this 8th day of March, 2012.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of Record via CM/ECF