UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60558-CIV-COHN/SELTZER

JAMES RIVER INSURANCE COMPANY,
an Ohio corporation,

       Plaintiff,

vs.

FORTRESS SYSTEMS, LLC, Nebraska
limited liability company, and BODYWELL
NUTRITION, LLC, a Florida limited
liability company,

       Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S
## EMERGENCY MOTION FOR JUDICIAL ESTOPPEL

**THIS CAUSE** is before the Court upon Plaintiff James River Insurance Company's ("James River's") Emergency Motion for Judicial Estoppel [DE 94] ("Motion").[1] The Court has considered the Motion, Defendant Bodywell Nutrition, LLC's Response [DE 98], James River's Reply [DE 101], the record in this case, and is otherwise fully advised in the premises.

### I. BACKGROUND

In this action, James River seeks a determination that it has no obligation to defend or indemnify Foretress Systems, LLC ("FSI"), in an underlying lawsuit, <u>Bodywell</u>

---

[1] The supplemental interrogatory response filed by Defendant Fortress Systems, LLC, which is the basis for this Motion, was submitted on September 19, 2012. Plaintiff did not file this Motion until October 8, 2012, with fact discovery due by October 19, 2012. To the extent that the Motion was urgent, Plaintiff should not have waited until nearly three weeks after the supplemental response was filed to move for judicial estoppel.

Nutrition LLC v. Fortress Systems, LLC, Case No. 10-61646-CIV-COHN/SELTZER (S.D. Fla. filed Aug. 2, 2010) ("the first case").  In the first case, Bodywell, a sports nutrition and dietary supplement company, sued FSI, a dietary supplement manufacturer.  Bodywell had retained FSI to manufacture a powder-form drink called First Order, which was supposed to be soluble in liquid.  However, First Order was defective because the powder clumped together and became insoluble.  Therefore, on August 2, 2010, Bodywell filed its complaint against FSI for breach of express warranty (Count I), breach of implied warranty of fitness for a particular purpose (Count II), and breach of implied warranty of merchantability (Count III).  See First Case, Compl. [DE 1-1].  On February 20, 2011, Bodywell filed an amended complaint to add an additional claim for negligent shipping/transport of First Order by FSI's subcontractors (Count IV).  See First Case, Am. Compl. [DE 50].

During the relevant period, FSI had a Commercial General Liability Insurance Policy [DE 1-2] ("Insurance Policy") with James River, with a five million dollar policy limit.  Though FSI tendered the suit to James River on August 16, 2010, James River disclaimed coverage under the insurance policy.

On March 4, 2011, Bodywell and FSI entered into a settlement agreement in the first case, which provided, among other things, that: (1) the parties would file a stipulation of settlement and joint motion for entry of final judgment requesting that the Court enter a final judgment in Bodywell's favor only on Count IV in the amount of $10,450,000; (2) Bodywell would dismiss with prejudice its remaining claims against FSI; and (3) FSI would assign its right to pursue its claim under the James River insurance policy to Bodywell.  On March 14, 2011, Bodywell and FSI filed their

settlement agreement under seal, and on March 17, 2011, they filed their Stipulation of Settlement and Joint Motion for Entry of Final Judgment.  On March 18, 2011, the Court entered a Final Judgment in accordance with the parties' filings.  Meanwhile, on March 15, 2011, James River filed this action against FSI and Bodywell, seeking a declaration that James River does not owe coverage to FSI under the insurance policy.

In the instant Motion, James River asks the Court to apply the doctrine of judicial estoppel to statements FSI made in a supplemental response to an interrogatory. James River asserts that Defendants argued throughout the first case that FSI was not directly negligent, but was only vicariously liable for the negligent shipping of its subcontractors.  James River points to numerous documents filed by Defendants, in both the first and the present case, in which Defendants allegedly averred that FSI was not negligent.  In particular, it refers to FSI's January 20, 2012 original response to the subject interrogatory, in which FSI said the following:

> INTERROGATORY NO. 8: Explain with particularity all of the facts and circumstances demonstrating your negligence with respect to the manufacturing, production, handling, or transportation of First Order.
>
> ORIGINAL RESPONSE: Objection — Negligence is [a] legal term that calls for a legal conclusion.  Notwithstanding this objection and without waiving the objection, **FSI responds that it was not negligent and that the allegations are that the shippers were negligent.  FSI directs James River to Count 4 of the Amended Complaint in the underlying case.**

Pl.'s Ex. E [DE 94-5] at 4 (emphasis added).  In its supplemental response filed on September 19, 2012, however, FSI stated:

> SUPPLEMENTAL RESPONSE: Objection — Negligence is [a] legal term that calls for a legal conclusion.  Notwithstanding this objection and without waiving the objection, **FSI responds that it was not negligent in the manufacture or production of First Order.  As to handling, the**

3

> **manner in which FSI loaded the product in the shippers' vehicle, without precaution for heat, potentially contributed to the damage**. . . .

Pl.'s Ex. G [DE 94-7] at 1-2 (emphasis added).  Both parties have stipulated that, in order for Defendants to ultimately prevail in the present suit, they may have to establish that First Order was damaged in part by FSI's improper loading of the product into shippers' vehicles.  See Motion at 12; Def. Bodywell's Opp'n to James River's Emergency Mot. for Judicial Estoppel [DE 98] at 7 n. 6.  Defendants oppose the Motion, arguing that Plaintiff has not established grounds for judicial estoppel.

## II. LEGAL STANDARD

Judicial estoppel is an equitable doctrine invoked at the court's discretion, intended to protect the integrity of the judicial process by preventing parties from making one representation in one case, only to change its position in a subsequent, related case.  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  "Courts have observed that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle."  Id. at 750 (internal quotations & citations omitted).

However, three factors are typically considered in determining whether to apply judicial estoppel:

> (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage.

Jaffe v. Bank of Am., N.A., 395 F. App'x 583, 587 (11th Cir. 2010) (citing New

Hampshire, 532 U.S. at 750-51); see also Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1335 (11th Cir. 2005) (focusing on the first two factors and noting the flexibility of the doctrine of judicial estoppel).  As described below, the Court will grant the Motion because all three circumstances cited in Jaffe weigh in favor of invoking estoppel in the present case.

### III. ANALYSIS

Here, James River asserts that FSI's supplemental response is inconsistent not only with its original response, but with Defendants' representations in the first case. Bodywell responds that its statements have been consistent because, in both suits, it has only claimed that FSI's liability derived from the subcontractors' negligence. Bodywell further contends that it did not have to raise FSI's improperly loading the shippers' vehicles in the first case because it was not relevant to that case.  It raises the issue now because it is relevant to the present action.  Bodywell essentially argues that its positions are consistent because it has never squarely addressed FSI's loading of First Order.  James River, however, points to numerous statements in which Defendants appear to affirmatively claim that FSI did not contribute to Bodywell's damages at any stage while it was in FSI's possession.  For example, in their Affirmative Defenses to the present suit, Defendants stated:

> 4. . . . . Bodywell alleged that the damage was caused by the shipping subcontractors after the product had already been manufactured and left FSI's control.
>
> 5. Exclusion L does not apply because the insured's subcontractor, not the insured, performed the defective work.
>
> 6. . . . . Here, the failure that caused the damage was the subcontractors', not FSI's.

Defs.' Answer and Affirmative Defenses [DE 11] at 7.  Likewise, in Bodywell's Rule Nisi Motion in the first case, Bodywell represented that "[i]n the case at bar, the negligence that caused the damage was the subcontractors', not FSI's."  First Case, Mot. for Entry of Rule Nisi [DE 64] at 15, n. 5.  Indeed, FSI's original response to Interrogatory Number Eight explicitly states, "FSI responds that it was not negligent and that the allegations are that the shippers were negligent.  FSI directs James River to Count 4 of the Amended Complaint in the underlying case."  Pl.'s Ex. E at 4.  FSI's supplemental response, stating that FSI's failure to properly load First Order into shippers' vehicle may have contributed to Bodywell's damages, is plainly at odds with its previous statements.

Bodywell argues that FSI supplemented its response in light of information it learned at depositions taken on September 10, 2012.  See Def. Bodywell's Opp'n to James River's Emergency Mot. for Judicial Estoppel at 6.  Yet at the same time, Bodywell represents that there has long been evidence on the record, in depositions taken on February 8, 2011 and February 10, 2011, that FSI loaded First Order without taking precautions for the heat.  See Def. Bodywell's Opp'n to James River's Emergency Mot. for Judicial Estoppel at 4.  Bodywell appears to have made the strategic choice to ignore that issue in the first case and to repeatedly argue that First Order was not damaged while in FSI's control.

Furthermore, as concerns the second element of the Jaffe analysis, Defendants successfully persuaded the Court in the first case that First Order was damaged only by the shippers' negligence.  In fact, the Court approved a settlement agreement between

6

the parties, and issued a Final Judgment awarding $10,450,000 to Bodywell for its negligent shipping claim.  See Bodywell Nutrition LLC v. Fortress Systems, LLC, Case No. 10-61646-CIV-COHN/SELTZER (S.D. Fla. filed Aug. 2, 2010) (DE 59) (Final Judgment).  The basis for the Final Judgment was the parties' representation that the shippers' negligence was the sole cause of damage to First Order.  The Court will not allow Defendants to now reverse course and undermine the foundation of the Final Judgment.

Moreover, looking to the third part of the Jaffe inquiry, it is clear that Defendants could gain an unfair advantage if they are not estopped.  As noted above, allowing Defendants to proceed on a theory of improper loading would allow them to change the factual basis of the Final Judgment of the first case, giving them a second bite at the apple to plead into coverage.  Additionally, it would permit Defendants to dramatically change the course of litigation one month before the discovery deadline.  While that might be less problematic if they had discovered new evidence, Defendants aver that evidence of the loading issue has been in the record for over one year.  Accordingly, because all three Jaffe factors weigh toward applying judicial estoppel, the Motion will be granted.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff James River Insurance Company's Motion for Judicial Estoppel [DE 94] is **GRANTED**.

2. Defendant FSI's Supplemented Response to Interrogatory 8 of James

River's First Set of Interrogatories is hereby **STRICKEN**.

3. Defendants are hereby **ESTOPPED** from asserting that Bodywell's damages were caused by FSI's manufacturing, production, handling, or loading of First Order product, or that First Order product was damaged at any time while in FSI's direct control.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 22nd day of October, 2012.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF