UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60558-CIV-COHN/SELTZER

JAMES RIVER INSURANCE COMPANY,
an Ohio corporation,

       Plaintiff,

v.

FORTRESS SYSTEMS, LLC, Nebraska
limited liability company, and BODYWELL
NUTRITION, LLC, a Florida limited
liability company,

       Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff James River Insurance Company's Motion for Summary Judgment [DE 108] ("James River's Motion") and Defendants' Amended Motion for Summary Judgment on Their Counterclaim [DE 113] ("Defendants' Cross-Motion"). The Court has considered the Motions, the parties' responses and replies, the record in this case, and is otherwise fully advised in the premises.[1]

---

[1] The Court notes that there are several discovery motions pending in this case. See Des 61, 71, 81, 91, 92. However, each of these motions relates to the reasonableness of the settlement entered into between Defendants Fortress Systems, LLC ("FSI"), and Bodywell Nutrition, LLC ("Bodywell"), rather than the threshold issue of coverage. If the Court found that FSI's damages were covered, then the Court would have to determine whether the settlement between FSI and Bodywell was reasonable, and whether James River Insurance Company ("James River") is bound by the consent judgment entered against FSI. See Coblentz v. American Surety, Co., 416 F.2d 1059, 1062-63 (5th Cir. 1969). However, as described below, the Court finds that FSI's damages were not covered by its policy with James River. Accordingly, the Court does not reach the issue of the reasonableness of the settlement, and the pending discovery motions are moot.

## I. BACKGROUND

In this action, Plaintiff James River Insurance Company ("James River") seeks a determination that it has no obligation to defend or indemnify Fortress Systems, LLC ("FSI"), in an underlying lawsuit, Bodywell Nutrition LLC v. Fortress Systems, LLC, Case No. 10-61646-CIV-COHN/SELTZER (S.D. Fla. filed Aug. 2, 2010) ("the first case"). In the first case, Bodywell Nutrition, LLC ("Bodywell"), a sports nutrition and dietary supplement company, sued FSI, a dietary supplement manufacturer. Bodywell had retained FSI to manufacture a powder-form drink called First Order. After FSI manufactured First Order, Bodywell and FSI (together, "Defendants") agreed that FSI would arrange for shipping the product to Bodywell's facilities. According to Defendants, FSI manufactured First Order without defect. However, the shipping companies to whom FSI subcontracted used vehicles without proper cooling systems. As a result, the First Order powder clumped together and became insoluble. Therefore, on August 2, 2010, Bodywell filed its complaint against FSI for breach of express warranty (Count I), breach of implied warranty of fitness for a particular purpose (Count II), and breach of implied warranty of merchantability (Count III). See First Case, Compl. [DE 1-1]. On February 20, 2011, Bodywell filed an amended complaint to add an additional claim for negligent shipping/transport of First Order by FSI's subcontractors (Count IV). See First Case, Am. Compl. [DE 50].

During the relevant period, FSI had a Commercial General Liability Insurance Policy [DE 1-3] ("insurance policy") with James River, with a five million dollar policy limit. FSI alleges that it tendered the suit to James River on August 23, 2010, but that James River disclaimed coverage under the insurance policy. See Def. Bodywell's

Counterclaim [DE 150] ¶ 17.

On March 4, 2011, Bodywell and FSI entered into a settlement agreement in the first case, which provided, among other things, that: (1) the parties would file a stipulation of settlement and joint motion requesting that the Court enter a final judgment in Bodywell's favor on Count IV in the amount of $10,450,000; (2) Bodywell would dismiss with prejudice its remaining claims against FSI; and (3) FSI would assign its right to pursue its claim under the insurance policy to Bodywell. See First Case, Stip. of Settlement and Joint Mot .for Entry of Final J. [DE 56].  On March 17, 2011, they filed their Stipulation of Settlement and Joint Motion for Entry of Final Judgment, and on March 18, 2011, the Court entered a Final Judgment in accordance with the parties' filings.  See First Case, Final J. [DE 59].

Meanwhile, on March 15, 2011, James River filed this action against FSI and Bodywell, bringing five claims.  See Compl. [DE 1].  Count I seeks a declaration that FSI's damages were not covered under the insurance policy.  Counts II and III seek to establish that the damages fell within several exclusions to coverage.  Count IV alleges that FSI is not covered because it breached the cooperation clause of the policy.  Count V asks the Court to find, in the alternative, that coverage is limited by certain amendments to the policy.  See id.  Defendants counterclaim that James River had a duty to defend FSI in the underlying suit, as well as a duty to indemnify FSI for its settlement with Boydwell.  See Def. Bodywell's Counterclaim [DE 50].

In its present Motion, James River moves for summary judgment, arguing that FSI's damages are not covered because they fall within several coverage exclusions in the policy.  Defendants' respond that the damage to First Order was covered, and that

3

none of the exclusions apply.  Defendants' Cross-Motion seeks a determination that James River had a duty to defend and indemnify FSI.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

4

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### III. ANALYSIS

This case concerns the scope of Plaintiff's coverage under its insurance policy. Per the Court's Order Determining Choice-of-Law [DE 45], Nebraska law governs the interpretation of the insurance policy in this action. Nebraska courts have held that the interpretation of an insurance policy is a question of law to be determined by the court. See Olson v. Le Mars Mut. Ins. Co., 269 Neb. 800, 805 (Neb. 2005). "[T]he court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning." Poulton v. State Farm Fire & Cas. Cos., 267 Neb. 569, 575-76 (Neb. 2004). In coverage disputes, the insured party bears the burden of proving coverage. See Pogge v. American Family Mut. Ins. Co., 272 Neb. 554, 563 (Neb. 2006). However, the insurer has the burden of proving the applicability of a coverage exclusion. See Auto-Owners Ins. Co. v. Home Pride Cos., 268 Neb. 528, 537 (Neb. 2004).

### A. James River's Motion

James River argues that FSI's claims are not covered by the Insurance Policy. The material facts related to coverage in this case are undisputed. FSI had a general commercial liability contract with James River, and the parties stipulate to the contents of the contract. See Pl.'s Statement of Undisputed Material Facts [DE 107] ¶¶ 25-35; Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts [DE 130] ¶¶ 25-35. FSI

produced First Order for Bodywell, and the product was damaged while in transit aboard FSI's shippers' vehicles.  See Pl.'s Statement of Undisputed Material Facts ¶ 2; Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 2.  Bodywell then sued FSI, and James River did not defend or indemnify FSI for its damages.  See Defs.' Statement of Undisputed Material Facts [DE 114] ¶ 28.  While the parties make arguments as to the applicability of several provisions of the policy, the Court finds two provisions — the Absolute Auto, Aircraft, and Watercraft Exclusion, and the products-completed operations hazard provision — to be dispositive.

### 1. Coverage for FSI's damages is precluded by the Absolute Auto Exception.

James River argues that coverage is precluded by the Absolute Auto, Aircraft and Watercraft Exclusion ("Absolute Auto Exclusion"), which bars coverage for "'property damage' arising out of the . . . use of any 'auto.'"  Insurance Policy at 39.  James River argues that the Absolute Auto Exclusion applies to FSI's damages because the clumping occurred as a result of the shippers' failure to use temperature controls in their vehicles.

Defendants respond that the damage did not arise out of the use of the shippers' vehicles, but rather out of the heat in the vehicles.  This may be true in the same limited sense that a driver's injury is caused by a collision with the steering wheel.  But it is obvious in both cases that the damage at issue arises out of the "(mis)use of an auto." Nebraska courts have found that, in order for an injury to "arise out of" the use of an auto, there must be "some causal relationship between the injury and the use of the vehicle."  Farmers Union Coop. Ins. v. Allied Prop. & Cas., 569 N.W.2d 436, 439 (Neb.

6

1997).  That standard is easily met in this case.

By Bodywell's own admission, First Order was damaged by the shippers' failure to use climate-controlled vehicles.  In Count IV of its Amended Complaint in the underlying action, Bodywell claimed that the shippers failed to heed the warning labels requiring that First Order be stored in a cool dry place, and "either used transport vehicles that were not temperature-controlled or did not use any temperature-controlling capabilities that were available in those vehicles."  First Case, Am. Compl. [DE 50] ¶ 105.  Bodywell further claimed that the damage occurred "[a]s a direct result of the negligent transport services of the shippers/subcontractors."  Id. ¶ 110.  Additionally, in Bodywell's Rule Nisi motion, it stated that, "the subcontracted shippers transported the product in trucks that lacked climate control, which caused the First Order product to clump and harden."  First Case, Bodywell's Mot. for Entry of Rule Nisi [DE 64] at 7.  Bodywell's statements show that it was the manner in which the vehicles were used, or the capabilities of the vehicles employed, that damaged First Order.  There is a clear causal connection between the use of the shippers' vehicles and the subsequent property damage.  Therefore, the Court concludes that the damage arose out of the use of an auto, and that Defendants' coverage claim is barred by the Absolute Auto Exclusion.

### 2. FSI's damages are not covered as a "products-completed operation hazard."

Defendants assert that FSI's damages are covered as a "products-completed operations hazard" ("PCOH").  Section III(3) of the Insurance Policy provides that the five million dollar Products-Completed Operations Aggregate Limit includes "'property

damage' included in the 'products-completed operations hazard.'" Insurance Policy at 11.  Defendants argue that the Absolute Auto Exclusion does not bar coverage because it conflicts with FSI's purported coverage under the PCOH provision.  Defendants assert that, as a result of such conflict, the meaning of the Absolute Auto Exclusion is ambiguous and should be interpreted in light of the PCOH provision.  The Court need not reach the issue of ambiguity because it finds that FSI's damages were not covered as a PCOH.

The policy defines PCOH as "'property damage' occurring away from premises you own or rent and arising out of 'your product.'" Insurance Policy at 17.  However, PCOH coverage does not include

> "'property damage' arising out of . . . the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the 'loading or unloading' of that vehicle by any insured."

Insurance Policy [DE 1-3] at 17-18.  Defendants contend that the damage to First Order avoids the exception because the damage arose out of FSI's loading the product without dry ice or other temperature controls.  Defendants claim that they are not asserting that FSI acted negligently, but rather that FSI created a condition for the shippers' negligence to damage First Order.

The Court observes that in its Order Granting Plaintiff's Emergency Motion for Judicial Estoppel [DE 104] ("Estoppel Order"), it estopped Defendants from arguing that "Bodywell's damages were caused by FSI's manufacturing, production, handling, or loading of First Order product, or that First Order product was damaged at any time while in FSI's direct control." Estoppel Order at 8.  Here, Defendants' loading argument

plainly violates the Estoppel Order, and accordingly, the Court will disregard that argument.  Furthermore, as noted in the Estoppel Order, Defendants have consistently asserted, both in this case and the underlying action, that Bodywell's damages had been caused solely by the shippers' negligence — and *not* by any failures of FSI, negligent or otherwise.  See Estoppel Order at 5-6.  Therefore, the Court finds that the damage to First Order was caused by its transportation, and not by a condition created by FSI's loading of the product.  Thus, the damage falls within the exception to PCOH coverage, and James River does not owe FSI coverage under the PCOH provision.  Accordingly, the Court will grant James River's Motion.

### B. Defendants' Cross-Motion

Defendants' counterclaim seeks a declaration establishing that James River owed FSI a duty to defend FSI against Bodywell's claims in the underlying suit, as well as coverage for FSI's damages.  The Court will deny Defendants' Cross-Motion as it relates to coverage for the reasons stated above.  The duty to defend, however, "is broader than the duty to indemnify."  Federated Serv. Ins. Co. v, Alliance Constr., LLC, 282 Neb. 638, 644 (Neb. 2011).  "An insurer is obligated to defend if (1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify."  Mortg. Express, Inc. v. Tudor Ins. Co., 278 Neb. 449, 460 (Neb. 2009).  However, the insurer does not have a duty to defend if the facts as pleaded by the insured and ascertained by the insurer indicate that the insurer has no potential liability to the insured under the policy.  See Peterson v. Ohio Cas. Group, 272 Neb. 700, 709-10 (Neb. 2006).

Defendants argue that James River violated its obligation by failing to conduct an investigation of Bodywell's claims before denying coverage. However, "an insurer's incomplete investigation, without more, does not establish that it had a duty to defend a concluded lawsuit against its insured." Id. at 710. Rather, it must be shown that a better investigation would have led the insurer to discover facts that require the insurer to indemnify. See id. Here, Defendants assert that the allegations in the Amended Complaint of the underlying suit were sufficient to establish coverage under the policy. See Defs.' Am. Mot. For Summ. J. on Their Counterclaim [DE 113] at 4-5. Defendants do not point to any facts outside of their pleadings that James River could have discovered through investigation. Moreover, for the reasons stated above, the allegations in the Amended Complaint of the underlying suit showed that FSI's damages fell within the Absolute Auto Exclusion, and that James River was not obligated to indemnify FSI. Therefore, the Court concludes that James River did not have a duty to defend FSI in the underlying suit, and Defendants' Cross-Motion will be denied. Furthermore, it appears that summary judgment on Defendants' counterclaim may be appropriately granted to a nonmovant, James River. Thus, in accordance with Federal Rule of Civil Procedure 56(f), the Court will give Defendants a reasonable time to respond in opposition to the granting of summary judgment for James River on Defendants' counterclaim.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. James River's Motion for Summary Judgment [DE 108] is **GRANTED**;

2. Defendants' Amended Motion for Summary Judgment on Their Counterclaim [DE 113] is **DENIED**;

3. Defendants shall have until **December 28, 2012**, to file any response in opposition to the Court's granting summary judgment in favor of the Plaintiff on Defendants' counterclaim.

4. The deadline for filing pretrial stipulation is extended until **January 2, 2013, at 12:00 pm**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 11th day of December, 2012.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF